IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROCKET MORTGAGE, LLC,              )
a Michigan limited liability company, )
                                  )
    Plaintiff,               )
                                  )   CIVIL ACTION FILE
                                  )   NO. _____
v.                                )
                                  )
SYNOVUS BANK, THE WEBSTER )
FIRM, P.C., and STEVEN         )
R. WEBSTER,                     )
                                  )
    Defendants.             )

## COMPLAINT

NOW COMES Plaintiff, ROCKET MORTGAGE, LLC F/K/A QUICKEN LOANS, LLC F/K/A QUICKEN LOANS INC.[1] ("Rocket Mortgage" or "Plaintiff"), by and through its undersigned counsel, COBB, OLSON & ANDRLE, LLC, and for its Complaint for Damages against SYNOVUS BANK ("SYNOVUS"), THE WEBSTER FIRM, P.C. ("FIRM"), AND STEVEN R. WEBSTER ("WEBSTER") (collectively referred to as "Defendants"), states as follows:

### PARTIES, JURISDICTION AND VENUE

---

[1] Quicken Loans Inc. converted to Quicken Loans, LLC on 4/5/20/20. Quicken Loans, LLC then changed its name to Rocket Mortgage, LLC effective 7/31/2021.

{03845675 v6}

1.      Rocket Mortgage is a limited liability company organized under the laws of the State of Michigan.  No member of Rocket Mortgage is deemed a citizen of any other State besides Delaware and Michigan for purposes of diversity jurisdiction.

2.      Synovus is a Georgia banking corporation which has a principal place of business in Lawrenceville, Gwinnett County, Georgia. Synovus may be served with process through its registered agent for service of process, CT Corporation, 289 South Culver Street, Lawrenceville, Georgia 30046.

3.      Firm is a dissolved Georgia Domestic Professional Corporation with a principal place of business in Duluth, Gwinnett County, Georgia.  Firm may be served with process through its registered agent for service of process at the time of dissolution, Steven R. Webster, 1140 Old Peachtree Road, Suite C, Duluth, Gwinnett County, Georgia 30097.

4.      Upon information and belief, Webster is a resident of Parkville, Baltimore County, Maryland.  Webster may be served with process at his residence address, 9434 Joppa Pond Road, Parkville, Baltimore County, Maryland 21234, or at such other place where he may be found.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different States and the amount in

{03845675 v6}

controversy exceeds $75,000.00.

6.      This Court has general personal jurisdiction over Defendants, because Synovus and Firm are registered in and have their principal offices in Georgia, and because Webster, while a resident of Maryland, was the registered agent for Firm at the time of dissolution.

7.      This Court also has specific personal jurisdiction over Defendants because the transaction as described in this Complaint took place in the State of Georgia.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Northern District of Georgia is a judicial district in which a substantial part of the events giving rise to Rocket Mortgage's claims occurred.

## GENERAL ALLEGATIONS

9.      Rocket Mortgage reincorporates Paragraphs 1 through 8 by reference.

10.     On July 12, 2022, Synovus filed a Complaint against the Firm and Webster in the Gwinnett County Superior Court for the State of Georgia, Case No. 22-A-05926-10.  (**Exhibit A**)

11.     In its Complaint, Synovus confirmed that on or about June 13, 2022, the Firm and Webster deposited a check in the amount of $388,528.40 (the "Check") into those defendants' IOLTA 7556 Trust Account (the "Account") which Account

{03845675 v6}

was maintained by Synovus.

12.    On June 15, 2022, the check was returned unpaid and marked "duplicate presentment."  See Exhibit A, ¶¶ 9, 10, and 11.

13.    As a result of the duplicative presentment of the Check, as of June 15, 2022, the Firm and Webster's Account was overdrawn in the amount of $373,772.92.  See Exhibit A, ¶13.

14.    Rocket Mortgage was a lender evidenced by a Security Deed and Note relating to the purchase of certain real property located at 1956 Neville Way, Macon, GA 31206, which transaction occurred on or about June 17, 2022 ("Transaction").

15.    In anticipation of closing the Transaction, on June 16, 2022, Rocket Mortgage inadvertently wired funds earmarked for implementing the Transaction to the Firm and Webster in the amount of $112,830.18 ("Funds"). (**Exhibit B**)

16.    Specifically, the Funds were deposited via wire into the Firm and Webster's Account maintained with Synovus.

17.    On June 21, 2022, Rocket Mortgage's settlement agent, Rocket Close f/k/a Amrock, LLC ("Rocket Close"), contacted the Firm and Webster and demanded that the Funds be returned.

18.    Additionally, Rocket Mortgage, through its bank, J.P Morgan Chase Bank, N.A. (MI) ("Chase"), issued a wire recall to Synovus.

{03845675 v6}

19.    On June 27, 2022, Rocket Mortgage was informed by Chase that Synovus denied Rocket Mortgage's wire recall request for the reason that the Funds were "unavailable."

20.    In its Complaint, Synovus confirmed that it received a wire from Rocket Mortgage in the amount of $112,830.18, which deposit reduced the amount by which the Firm and Webster were overdrawn on the Account to $260,942.77. See Exhibit A, ¶14.

21.    In its Complaint, Synovus confirmed that Rocket Mortgage requested Synovus return the Funds, but that Synovus was "gathering information to respond to this claim of Rocket Mortgage." See Exhibit A, ¶15.

22.    As admitted by Synovus in its Complaint, Synovus used the Funds to offset and reduce the Firm and Webster's debt owed to Synovus due to the Firm and Webster's overdraft of the Account.

23.    Rocket Mortgage has made numerous demands, both in writing and verbally, as well as independently and through counsel, that the Defendants return the Funds.

24.    As of the filing of this Complaint, the Defendants have failed and refused to return the Funds to Rocket Mortgage.

## <u>COUNT I – CONVERSION (ALL DEFENDANTS)</u>

{03845675 v6}

25.    Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

26.    Rocket Mortgage wired the Funds in escrow which were earmarked for specific purposes as part of the Transaction, and thus retains title to the Funds.

27.    The Defendants are in actual possession of the Funds.

28.    Rocket Mortgage has repeatedly demanded that the Defendants return the Funds.

29.    The Defendants have failed, refused, and neglected to return the Funds to Rocket Mortgage.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter a judgment in its favor and against all Defendants on Count I of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

**COUNT II – UNLAWFUL SETOFF USING TRUST FUNDS (SYNOVUS)**

30.    Rocket Mortgage incorporates all previous allegations as if fully restated herein.

31.    The Funds were deposited into an Interest On Lawyers Trust Account or IOLTA account, which is an account type utilized exclusively by attorneys to

{03845675 v6}

deposit funds held in trust on behalf of third parties other than the account-holder.

32.    By virtue of having been deposited into an IOLTA account, Synovus had actual knowledge that the Funds were designated or earmarked as funds to be held in trust for a third party, and accordingly, knew or should have known that the Firm and Webster had no right, title, or interest in and to such Funds.

33.    Given that its account holders, Firm and Webster, had no right or interest in and to the Funds, Synovus unlawfully and improperly utilized the Funds to set off against other amounts owed by the Firm and Webster to Synovus.

34.    Rocket Mortgage is entitled to recover from Synovus the full amount of the Funds which were unlawfully utilized by Synovus to set off against other amounts owed by the Firm and Webster.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter a judgment in its favor and against Synovus on Count II of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## COUNT III – UNJUST ENRICHMENT (ALL DEFENDANTS)

35.    Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

{03845675 v6}

36.     A benefit was conferred upon the Firm and Webster in the amount of the Funds as such monies were applied to reduce the amount of their outstanding debt owed to Synovus.

37.     A benefit was conferred upon Synovus in the amount of the Funds by virtue of their application to reduce the amount of the outstanding debt owed by the Firm and Webster to Synovus.

38.     Rocket Mortgage was in no way compensated for the benefit received by any of the Defendants.

39.     The Defendants' failures to compensate Rocket Mortgage for the benefits that each Defendant has received is improper and unjust.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count III of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## COUNT IV – ACTION FOR MONEY HAD AND RECEIVED
## (ALL DEFENDANTS)

40.     Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

{03845675 v6}

41.     Rocket Mortgage is, in all equity, fairness, and good conscience, entitled to the Funds.

42.     The Funds rightly belong to Rocket Mortgage and Rocket Mortgage is the true owner of the Funds.

43.     None of the Defendants are equitably entitled to retain possession of the Funds.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count IV of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## COUNT V – ERRONEOUS PAYMENT OF ORDERS (GA CODE § 11-4A-205) (SYNOVUS)

44.     Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

45.     Rocket Mortgage erroneously directed payment of the Funds to Webster and the Firm.

46.     The Firm and Webster were not the closing or escrow agent associated with the Transaction, and thus were not the beneficiaries to which Rocket Mortgage

{03845675 v6}

intended to transfer the Funds.

47. Rocket Mortgage followed appropriate security procedures for detection of the error in conveyance of the Funds.

48. Synovus failed to follow appropriate security procedures for detection of the error in receiving the Funds.

49. Had Synovus followed appropriate security procedures for detection of the error in the course of receiving the Funds, Synovus would have prevented the erroneous application of the Funds to or for the benefit of the Firm and Webster.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count V of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## COUNT VI – CLAIMS FOR ADDITIONAL DAMAGES
### (ALL DEFENDANTS)

50. Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

51. The Firm and Webster were aware upon receipt of the Funds by Synovus that they were not the closing or escrow agent associated with the

{03845675 v6}

Transaction, and thus not entitled to receive or retain the Funds.

52.    Within days of receiving the Funds, Synovus was aware that the Funds were inadvertently wired to Synovus, and that Synovus was not entitled to receive or retain the Funds.

53.    Rocket Mortgage has made numerous efforts to contact each of the Defendants to demand return of the Funds in an effort to avoid unnecessary litigation.

54.    In Synovus' Complaint filed on July 12, 2022, Synovus represented to the Court that it was "gathering information to respond" to Rocket Mortgage's demand that the Funds be returned.

55.    However, on June 27, 2022, two weeks prior to the date on which Synovus' Complaint was filed in that action, Synovus had already denied Rocket Mortgage's wire recall request.

56.    As of the date of this filing, Synovus has failed to provide any further response to Rocket Mortgage's requests that the Funds be returned.

57.    Synovus has acted in bad faith with respect to this action by representing to the Court that it intended to investigate the merits of Rocket Mortgage's request that the Funds be returned, when in fact Synovus had already declined to consider Rocket Mortgage's request.

{03845675 v6}

58.    Defendants have acted in bad faith with respect to their improper and unlawful retention of the Funds.

59.    Defendants have subjected Rocket Mortgage to unnecessary trouble and expense by way of their failures and refusals to return the Funds to Rocket Mortgage.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count VI of this Complaint in the amount of $112,830.18, together with interest, costs, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## **COUNT VII – PUNITIVE DAMAGES (ALL DEFENDANTS)**

60.    Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

61.    Defendants have acted with willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

62.    Defendants have further acted with a specific intent to cause harm to Rocket Mortgage such that an award of punitive damages should be free from the $250,000 cap imposed by O.C.G.A. 51-12-5.1(g).

{03845675 v6}

63.    Rocket Mortgage is therefore entitled to an award of unlimited punitive damages against Defendants, jointly and severally, in an amount to be proven at trial.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count VII of this Complaint in the amount of $112,830.18, together with interest, costs, putative damages, exemplary damages, and attorney fees and all other relief that the Court deems just and equitable under the circumstances.

## COUNT VIII – ATTORNEY'S FEES AND EXPENSES (ALL DEFENDANTS)

64.    Rocket Mortgage incorporates by reference all previous paragraphs as if fully set forth herein.

65.    Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense, thus further entitling Plaintiff to an award of its attorney's fees and expenses incurred herein, in an amount to be proven at trial or final hearing herein.

WHEREFORE, Rocket Mortgage respectfully requests that this Honorable Court enter judgment in its favor and against Defendants on Count VII of this Complaint in the amount of $112,830.18, together with interest, costs, putative

{03845675 v6}

damages, exemplary damages, and attorney fees and all other relief that the Court

deems just and equitable under the circumstances.


Respectfully submitted this 11th day of June, 2026.

COBB, OLSON & ANDRLE, LLC


By: */s/ Frank R. Olson*
Frank R. Olson
Georgia Bar No. 553077
500 Sugar Mill Road, Ste. 160-B
Atlanta, GA 30350
770-200-8589
folson@coalegal.com
Counsel for Rocket Mortgage, LLC

{03845675 v6}

# Exhibit A

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**22-A-05926-10**
**7/12/2022 4:01 PM**
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

SYNOVUS BANK,                          *
                                       *
        Plaintiff,                     *
                                       *
v.                                     *      Case No.: 22-A-05926-10
                                       *
                                       *      _____
THE WEBSTER FIRM, P.C. and             *
STEVEN R. WEBSTER,                     *
                                       *
        Defendants.                    *

## COMPLAINT

COMES NOW Synovus Bank, by counsel, and files this Complaint for

Damages, respectfully showing the Court the following:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Synovus Bank is a Georgia banking corporation which has a

principal place of business in Columbus, Muscogee County, Georgia.

2.

Defendant The Webster Law Firm, P.C. ("Webster Law") is a Georgia

Domestic Professional Corporation with a principal place of business in Duluth,

Gwinnett County, Georgia. Webster Law may be served with process through its

registered agent for service of process, Steven R. Webster, 1140 Old Peachtree

Road, Suite C, Duluth, Gwinnett County, Georgia 30097.

1

3.

Upon information and belief, Defendant Steven R. Webster is a resident of Duluth, Gwinnett County, Georgia. Mr. Webster may be served with process at 1140 Old Peachtree Road, Suite C, Duluth, Gwinnett County, Georgia 30097.

4.

As set forth herein, Defendants Webster Law and Steven R. Webster are joint obligors, joint tortfeasors, joint promisors, copartners, or joint trespassers within the meaning of O.C.G.A. § 9-10-31 and Ga. Const. ¶ 4, § 2, Art. VI.

5.

Defendants are subject to the jurisdiction of this Court.

6.

Venue is proper in this Court as one or more of the Defendants is a resident of Gwinnett County, Georgia.

## BACKGROUND FACTS

7.

Synovus Bank incorporates Paragraphs 1 through 6 by reference.

8.

On or about July 17, 2019, Webster Law opened several accounts with Synovus Bank including a DDA operating account numbered xxxxxx7564 (the "DDA Account"), an IOLTA account numbered xxxxxx7556 (the "IOLTA 7556

2

Account") and an IOLTA account numbered xxxxxx7549 (the "IOLTA 7549 Account"). Steven R. Webster was an authorized signer on all three of these accounts.

9.

On or about June 13, 2022, an official Bank of America check dated April 8, 2022, bearing check number xxxxxx1416 (the "Bank of America check") in the amount of $388,528.40 and payable to the Webster Firm, was deposited into the IOLTA 7556 Account via mobile channel.

10.

The Bank of America check was deposited into the IOLTA 7556 Account of Webster Law by Steven R. Webster or at his specific direction.

11.

On or about June 15, 2022, the Bank of America check was returned by Bank of America unpaid and marked "duplicate presentment."

12.

In fact, the Bank of America check had previously been deposited on or about April 13, 2022 by Webster Law or its representatives, including Steven R. Webster.

3

13.

When the Bank of America check was returned to Synovus Bank as a "duplicate presentment" on or about June 15, 2022, it resulted in an overdraft in the IOLTA 7556 Account of $373,772.95.

14.

Thereafter, Synovus Bank received a wire into the IOLTA 7556 Account in the amount of $112,830.18 from another mortgage lender named Rocket Mortgage. This deposit has reduced the overdraft in the IOLTA 7556 Account to $260,942.77.

15.

Rocket Mortgage has requested that Synovus Bank return the wire in the amount of $112,830.18. At present, Synovus Bank is still gathering information to respond to this claim of Rocket Mortgage.

16.

Synovus Bank has demanded that Webster Law and Steven R. Webster provide information sufficient to determine why IOLTA 7556 became overdrawn and to provide an accounting with respect to this account. Webster Law and Steven R. Webster have been non-responsive to Synovus Bank's requests.

4

17.

The IOLTA 7556 Account remains overdrawn with a current negative balance of $260,942.77.

18.

Synovus Bank is still investigating the overdraft in the IOLTA 7556 Account to determine what other amounts may be lost or due from the account.

## IMPROPER USE OF IOLTA FUNDS

19.

Synovus Bank incorporates Paragraphs 1 through 18 by reference.

20.

Subsequent to the overdraft in the IOLTA 7556 Account, Synovus Bank conducted an internal investigation into the account. That investigation remains ongoing.

21.

In the course of its investigation, Synovus Bank learned, upon information and belief, that after the Bank of America check was deposited into the IOLTA 7556 Account on June 13, 2022 but before it was returned unpaid by Bank of America on June 15, 2022 due to the dupulicate presentment, numerous transfers were made by Webster Law and/or Steven R. Webster from the IOLTA 7556 Account to the DDA Account and the IOLTA 7549 Account.

5

22.

Upon information and belief, the transfers made by Webster Law and/or Steven R. Webster from the IOLTA 7556 Account between June 13, 2022 and June 15, 2022 were to pay certain expenses of Webster Law or personal investments or expenses of Steven R. Webster.

23.

In the course of its investigation regarding the overdraft in the IOLTA 7556 Account and the subsequent transfers from that account, Synovus Bank has requested various documents and information from Webster Law and Steven R. Webster, but no such information has been provided.

24.

Upon information and belief, the transfers made from the IOLTA 7556 Account between June 13, 2022 and June 15, 2022 were made in violation of the Rules of the State Bar of Georgia applicable to Georgia attorneys, including Webster Law and Steven R. Webster.

25.

Upon information and belief, the transfers made from the IOLTA 7556 Account between June 13, 2022 and June 15, 2022 were made with the specific intent to defraud Synovus Bank and others who rightfully had claims to the funds in the IOLTA 7556 Account.

6

## COUNT 1 – ACCOUNTING

## AGAINST THE WEBSTER LAW FIRM, P.C.
## AND STEVEN R. WEBSTER

26.

Synovus Bank incorporates paragraphs 1 through 25 by reference.

27.

Through the actions of Webster Law and Steven R. Webster, the IOLTA 7556 Account remains overdrawn with a negative balance of $260,942.77.

28.

Synovus Bank has attempted to investigate the overdraft in the IOLTA 7556 Account and has requested documents and information from Webster Law and Steven R. Webster.

29.

Webster Law and Steven R. Webster have not cooperated in Synovus Bank's investigation.

30.

In order to fully evaluate the overdraft in the IOLTA 7556 Account and the subsequent transfers therefrom, Synovus Bank is in need of books and records of Webster Law and Steven R. Webster showing transfers in and out of the IOLTA 7556 Account, the DDA Account, and the IOLTA 7549 Account.

31.

Synovus Bank is entitled to a judgment requiring a full and complete accounting from the Defendants regarding the IOLTA 7556 Account, the DDA Account, and the IOLTA 7549 Account.

## COUNT TWO

## BREACH OF CONTRACT AGAINST THE WEBSTER LAW FIRM, P.C.

32.

Synovus Bank incorporates paragraphs 1 through 31 by reference.

33.

At the time Webster Law established the IOLTA 7556 Account, Webster Law executed an account agreement regarding the account. The agreement incorporated certain Account Agreement Disclosures entitled "Understanding Your Deposit Account" (all collectively the "Account Agreement").

34.

The Account Agreement provides that even if funds are made available to an account holder by Synovus Bank, the account holder is responsible for any items deposited if they are later returned as unpaid.

35.

The Account Agreement was a valid and binding contract between Synovus Bank and Webster Law.

8

36.

The IOLTA 7556 Account remains overdrawn with a negative balance of $260,942.77. The amount may ultimately be higher as Synovus Bank continues to investigate.

37.

Webster Law was immediately notified of the overdraft in the IOLTA 7556 Account but, to date, has not remedied it.

38.

Webster Law breached the Account Agreement with Synovus Bank.

39.

As a direct and proximate result of Webster Law's breach of contract, Synovus Bank has suffered damages.

40.

Webster Law is liable to Synovus Bank for breach of contract in an amount to be proven at trial, but not less than $260,942.77, plus applicable overdraft fees, interest, attorney's fees and expenses, and costs.

## COUNT THREE

## UCC § 11-4-401 AGAINST THE WEBSTER LAW FIRM, P.C.

41.

Synovus Bank incorporates paragraphs 1 through 40 by reference.

9

42.

O.C.G.A. § 11-4-401 provides that "[a] bank may charge against the account of a customer an item that is properly payable from the account even though the charge creates an overdraft."

43.

By virtue of O.C.G.A. § 11-4-401 and binding Georgia authority interpreting the same, when a bank account holder's account is overdrawn, the account holder is liable to the bank for all such overdrawn amounts.

44.

On or about June 13, 2022, the Bank of America check in the amount of $388,528.40 was deposited into the Webster Law account. At the time the deposit was made, both Webster Law and Steven R. Webster knew that the Bank of America check had previously been deposited.

45.

On or about June 15, 2022, the Bank of America check was returned unpaid by Bank of America to Synovus Bank and marked "duplicate presentment."

46.

Between June 13, 2022 and June 15, 2022, Synovus Bank paid items presented for payment on the IOLTA 7556 Account, which items were expressly authorized by Webster Law.

47.

When the Bank of America check was returned, an overdraft in the IOLTA 7556 Account occurred. The IOLTA 7556 Account remains overdrawn with a negative balance of $260,942.77. The amount may ultimately be higher as Synovus Bank continues to investigate.

48.

Pursuant to O.C.G.A. § 11-4-401, and binding Georgia law interpreting the same, Webster Law is liable to Synovus Bank in an amount to be proven at trial, but not less than $260,942.77, plus applicable overdraft fees, interest, attorney's fees and expenses, and costs.

## COUNT FOUR

### CONVERSION AGAINST THE WEBSTER LAW FIRM, P.C. AND STEVEN R. WEBSTER

49.

Synovus Bank incorporates paragraphs 1 through 48 by reference.

50.

At the time the Bank of America check deposit in the amount of $388,528.40 was made, both Webster Law and Steven R. Webster knew that the Bank of America check had previously been deposited.

11

51.

At the time the Bank of America check deposit in the amount of $388,528.40 was made, both Webster Law and Steven R. Webster knew that there were items pending in the IOLTA 7556 account that would cause the account to ultimately be overdrawn.

52.

On or about June 15, 2022, the Bank of America check was returned unpaid by Bank of America to Synovus Bank and marked "duplicate presentment."

53.

Between June 13, 2022 and June 15, 2022, Synovus Bank paid items presented for payment on the IOLTA 7556 Account, which items were expressly authorized by Webster Law.

54.

When the Bank of America check was returned, an overdraft in the IOLTA 7556 Account occurred. The IOLTA 7556 Account remains overdrawn with a negative balance of $260,942.77.

55.

Upon information and belief, Webster Law and Steven R. Webster utilized the funds available from the duplicate Bank of America check deposit for means other than those intended by Webster Law clients, including for personal and

12

business expenses.

56.

Webster Law and Steven R. Webster exercised an unauthorized assumption and exercise of the right of ownership over funds belonging to Synovus Bank in hostility to its rights, and they misappropriated and converted funds in the IOLTA 7556 Account.

57.

The funds misappropriated and converted by Webster Law and Steven R. Webster are specifically identifiable.

58.

As a direct and proximate result of Webster Law's and Steven R. Webster's acts of conversion, Synovus Bank has been damaged.

59.

Webster Law and Steven R. Webster are liable to Synovus Bank in an amount to be proven at trial, but not less than $260,942.77, plus applicable overdraft fees, interest, punitive damages, attorney's fees and expenses. and costs.

## COUNT FIVE

### FRAUD AGAINST THE WEBSTER LAW FIRM, P.C. AND STEVEN R. WEBSTER

60.

Synovus Bank incorporates paragraphs 1 through 59 by reference.

13

61.

When Webster Law and/or Steven R. Webster deposited the Bank of America check into the IOLTA 7556 Account on or about June 13, 2022, both Webster Law and Steven R. Webster knew that the Bank of America check had previously been presented for payment.

62.

When Webster Law and/or Steven R. Webster deposited the Bank of America check into the IOLTA 7556 Account on or about June 13, 2022, both Webster Law and Steven R. Webster knew that the Bank of America check would not be paid, and that the IOLTA 7556 Account would become overdrawn if any other items were presented for payment to the account in the meantime.

63.

Upon information and belief, after the Bank of America check was deposited into the IOLTA 7556 Account but before it was returned unpaid by Bank of America due to the dual presentment, the following transfers were made by Webster Law and/or Steven R. Webster from the IOLTA 7556 Account to the DDA Account (collectively the "DDA Transfers"):

(a) The sum of $100,000 was transferred to the DDA Account, which is an operating account and not an attorney trust account;

(b) Approximately $48,000 of the $100,000 transfer to the DDA Account

14

was sent from the DDA Account to Wells Fargo Bank to an individual account owned by Steven R. Webster;

(c) Approximately $43,000 of the $100,000 transfer to the DDA Account was sent from the DDA Account to American Express to cover credit card payments; and

(d) The remaining sums from the $100,000 transfer to the DDA Account were then used to pay fees and other small payments.

64.

Upon information and belief, after the Bank of America check was deposited into the IOLTA 7556 Account but before it was returned unpaid by Bank of America due to the dual presentment, the following transfers were made by Webster Law and/or Steven R. Webster from the IOLTA 7556 Account to the IOLTA 7549 Account (collectively the "IOLTA Transfers"):

(a) $23,256.05 was transferred from the IOLTA 7556 Account to the IOLTA 7549 Account, some of which remains in the IOLTA 7549 Account and some of which has been used to pay various expenses;

(b) $240,000 was transferred from the IOLTA 7556 Account to the IOLTA 7549 Account, some of remains and some of which has been used to pay various expenses; and

15

(c) $42,000 was then transferred back from the IOLTA 7549 Account to the IOLTA 7556 Account.

65.

In the course of its investigation regarding the overdraft in the IOLTA 7556 Account and the subsequent transfers from that account, Synovus Bank has requested various documents and information from Webster Law and Steven R. Webster, but no such information has been provided.

66.

In the course of Synovus Bank's investigation, Steven R. Webster has made material false statements and/or omissions to Synovus Bank including, but not limited to:

(a) That the overdraft in the IOLTA 7556 Account was a "mix-up" or caused by the actions of an ex-employee, or similar statements to that effect;

(b) That the Bank of America check was not a duplicate presentment;

(c) That other funds from a missing wire from Bank of America caused the overdraft;

(d) That no funds were transferred from the IOLTA 7556 Account to an operating account; and

(e) That no funds transferred from the IOLTA 7556 Account were ultimately sent to a personal account of Steven R. Webster.

16

67.

The false and misleading statements and/or omissions made by Steven R. Webster to Synovus Bank were made with the specific intent to cover up the fraudulent transfers out of the IOLTA 7556 Account, the DDA Account, and the IOLTA 7549 Account.

68.

The DDA Transfers and the IOLTA Transfers were made before Synovus Bank was notified that the Bank of America check had been dishonored due to a duplicate presentment.  Synovus Bank exercised due diligence in the processing of transactions in the IOLTA 7556 Account, but was defrauded by Webster Law and Steven R. Webster.

69.

The DDA Transfers and the IOLTA Transfers violated the rules of the State Bar of Georgia applicable to attorneys including Webster Law and Steven R. Webster.

70.

Webster Law and Steven R. Webster knew that the DDA Transfers and the IOLTA Transfers were fraudulent transfers made with the specific intent of causing an overdraft in the IOLTA 7556 Account.

17

71.

As a direct and proximate result of the fraud committed by Webster Law and Steven R. Webster, Synovus Bank has been damaged.

72.

Webster Law and Steven R. Webster are liable to Synovus Bank in an amount to be proven at trial, but not less than $260,942.77, plus applicable overdraft fees, interest, punitive damages, attorney's fees and expenses, and costs.

## COUNT SIX

## PUNITIVE DAMAGES AGAINST THE WEBSTER LAW FIRM, P.C. AND STEVEN R. WEBSTER

73.

Synovus Bank incorporates paragraphs 1 through 72 by reference.

74.

The tortious acts and omissions of Webster Law and Steven R. Webster showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

75.

The tortious acts and omissions of Webster Law and Steven R. Webster were done with the specific intent to cause harm to Synovus Bank.

18

76.

Webster Law and Steven R. Webster are liable to Synovus Bank for punitive damages in an amount to be proven at trial, without regard to any statutory caps set forth in O.C.G.A. § 51-12.5.1(g).

## COUNT SEVEN

## ATTORNEY'S FEES AND EXPENSES AGAINST THE WEBSTER LAW FIRM, P.C. AND STEVEN R. WEBSTER

77.

Synovus Bank incorporates paragraphs 1 through 76 by reference.

78.

Webster Law and Steven R. Webster have acted in bad faith, been stubbornly litigious, and caused Synovus Bank unnecessary trouble and expense.

79.

Pursuant to O.C.G.A. § 13-6-11, Webster Law and Steven R. Webster are liable to Synovus Bank for attorney's fees and expenses in an amount to be proven at trial.

WHEREFORE, Synovus Bank respectfully requests the following relief:

(1)    Trial by jury;

(2)    That the Court enter judgment in favor of Synovus Bank and against Webster Law and Steven R. Webster as set forth in above particulars; and

19

(3)     That the Court grant such other and further relief as deemed just and

appropriate.

This 12th day of July, 2022.

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By: _____
Alan G. Snipes
Georgia Bar No.: 665781

1111 Bay Avenue, Third Floor
P.O. Box 1199
Columbus, GA 31901
(706) 324-0251

20

# Exhibit B

# ROCKET MORTGAGE LLC

J.P.Morgan

** All values are subject to verification and adjustments. **

**Transaction Details**

| Transaction Information | | |
| --- | --- | --- |
| **Acct. Number** | **Bank ID** | **Status** |
| 2844 | 07200032 | Completed - Straight |
| **Acct. Name** | **Bank Name** | |
| Operating Account | JPMorgan Chase Bank, N.A. (MI) | |
| **Credit/Debit** | **Value Date** | **BAI Code** |
| DR | 06/16/2022 | 495 |
| **Amount** | **Transaction Date** | **Description** |
| 112,830.18 USD | 06/16/2022 | FEDWIRE DEBIT |
| **Immediate Available** | **Transaction Type** | |
| 112,830.18 USD | FED | |
| **1 Day Available** | **Customer Reference** | |
| 0.00 USD | 416728 | |
| **2 Day Available** | **Bank Reference** | |
| 0.00 USD | 5327600167JO | |
| **3+ Day Available** | | |
| 0.00 USD | | |

| Remarks / Additional Transaction Information |
| --- |

YOUR REF=416728

PAID TO=SYNOVUS BANK SHAWN REDMON PO BOX 120 COLUMBUS GA 31902- US

FED ID=      0606

ACCT PARTY=        7556 THE WEBSTER FIRM PC US

REMARK=3505101275 SELF FUND DISBURSEMENT 72419140 CREDIT REF CAP OF 22/06/16

REC GFP=06161834

MRN SEQ=00167JO53276

FED REF=0616 B1QGC08C 029259 **VIA FED**

| ROCKET MORTGAGE LLC Notes |
| --- |

0 Notes

| Notes | Created By | Created On | Updated On |
| --- | --- | --- | --- |
| | | There are no Notes associated with this transaction. | |